CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 19, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAMONT D. DRAYTON,<br>    Plaintiff, | )<br>)<br>)<br>) Civil Action No. 7:22-cv-00574<br>) |
| v. | )<br>) |
| SGT. NEWMAN, *et al.,*<br>    Defendants. | ) By: Elizabeth K. Dillon<br>) United States District Judge<br>) |

**MEMORANDUM OPINION**

In this action, *pro se* plaintiff Lamont Drayton, an inmate housed at a Virginia Department of Corrections facility, alleges claims for excessive force and retaliation against five defendants, identified as Sgt. Newman, Lt. H.M. May, correctional officers S.M. Snead and J. Adams, and Unit Manager Mr. Richardson. (*See* Am. Compl., Dkt. No. 70.) Defendants have moved for summary judgment. (Dkt. No. 79.) Also before the court is a motion to compel discovery filed by Drayton. (Dkt. No. 97.)

The court will deny Drayton's motion to compel, and defendants' motion for summary judgment will be granted in part and denied in part. The court will refer this matter to a magistrate judge for an evidentiary hearing on the issue of whether administrative remedies were available to Drayton.

I. BACKGROUND

**A. Plaintiff's Allegations**

Drayton was incarcerated at River North Correctional Center during the time described in the amended complaint. Drayton alleges that he was assaulted in his segregation cell by Sgt. Newman, Lt. May, Officer Snead, and Officer Adams. (Am. Compl. at 3.) On June 24, 2022, Drayton complained to Sgt. Newman that Officer Snead took his food tray. Newman and

Drayton exchanged obscenities. Newman then opened the cell door, entered, and assaulted Drayton. Snead rushed in and hit Drayton across the head twice with a metal pepper spray can. Lt. May punched Drayton several times, resulting in a bloody nose. Adams pushed Drayton several times while he was in handcuffs; Drayton claims that Adams was trying to break his wrists. May also kneeled on Drayton's back, and Drayton could not breathe.

Drayton further alleges that, from June 24 to August 19, 2022, he was not allowed to shower and was confined to a filthy strip cell with dried feces on the walls, poor ventilation, and the smell of urine, and he was subject to mental abuse. (Am. Compl. at 4.) Pertaining to administrative remedies, Drayton claims that he was unable to exhaust them due to circumstances beyond his control, such as being confined to a strip cell and not having any property, including a pencil or paper complaint forms. (*Id.* at 5.) Drayton believes that he was subjected to these conditions for the purpose of preventing him from exhausting his administrative remedies. (*Id.*) Finally, Drayton alleges that Richardson failed to discipline the officers involved in the assault, thus tacitly authorizing their actions, and that Snead retaliated against him by writing a false disciplinary report, resulting on Drayton's transfer and unspecified sanctions. (*Id.* at 6.)

**B. VDOC Offender Grievance Procedure**

Defendants' central argument is that Drayton did not exhaust his administrative remedies. In support of their motion for summary judgment, defendants submitted affidavits from River North Unit Manager B. Hall and River North Institutional Operations Manager B. Wagner. (Dkt. Nos. 80-1, 80-2.)

Operating Procedure (OP) 866.1 is a mechanism for offenders to resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The process

provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. (*See* Wagner Aff. ¶ 4, Encl. A.) All issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, issues related to institutional disciplinary hearings, State and Federal court decisions, laws, and regulations, and matters beyond the control of the VDOC. Each inmate is entitled to use the grievance procedure for problem resolution. (Wagner Aff. ¶ 5.)

Pursuant to OP 866.1, an inmate properly exhausts his administrative remedies by timely filing a regular grievance at the institutional level and appealing that regular grievance through all applicable levels of review. (Wagner Aff. ¶ 6.) However, prior to filing a grievance, an inmate must demonstrate that he has made a good faith effort to informally resolve his complaint using the Informal Complaint Process. The Informal Complaint Process involves an inmate submitting both a verbal complaint and an Informal/Written Complaint. After an inmate lodges a verbal complaint, and if the issue remains unresolved or the inmate is not satisfied with the resolution, the inmate may file an Informal/Written Complaint. (*Id.* ¶ 7.) An Informal/Written Complaint must be filed within 15 days of the incident or discovery of the incident of which the inmate complains. Institutional staff then have 15 days to respond. (*Id.* ¶ 8.)

If an inmate is dissatisfied with staff's response to his Informal/Written Complaint, or if 15 days have passed without a staff response, the inmate may file a Regular Grievance. (Wagner Aff. ¶ 9.) Regular Grievances are to be submitted within 30 calendar days from the date of the incident. When filing a Regular Grievance, an inmate must attach any required documentation demonstrating his or her attempt to informally resolve the issue through the Informal Complaint Process. OP 866.1 requires an inmate to submit a copy of his Written Complaint with his Regular Grievance to show that he or she attempted informal resolution. (*Id.* ¶ 10.) Regular

Grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within two working days from the receipt with a note explaining the reason for return on the intake section.[1] The inmate is instructed how to remedy any problems with the Regular Grievance when possible.  A copy is made of all Regular Grievances that are returned to the inmate with the justification for the return noted on the second page of the form.  If an inmate wants a review of the intake decision, he can send the grievance to the Regional Ombudsman, after which there is no further review of the intake decision.  Appealing the intake decision does not satisfy the exhaustion requirement.  (*Id.* ¶ 11.)

If a Regular Grievance is accepted during the intake process, there are three levels of possible review.  Level I reviews are conducted by the Warden or Superintendent of the prison.  If the inmate is dissatisfied with the determination, he may appeal to Level II.  Level II responses are provided by the Regional Administrator, the Health Services Director, the Chief of Operations for Offender Management Services, or the Superintendent for Education.  For most issues, Level II is the final level of review.  For those issues appealable to Level III, they are reviewed by the Deputy Director or Director of the VDOC.  The time limit for issuing a response is 30 days for Level I, 20 days for Level II, and 20 days for Level III.  Expiration of the time limit without issuance of a response at any stage automatically qualifies the Regular Grievance for appeal. (Wagner Aff. ¶ 12.)  An inmate may file an Emergency Grievance if he believes there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm.  The filing of an Emergency Grievance does not satisfy the exhaustion requirement.  (*Id.* ¶ 13.)

---

[1] Reasons include failure to including required documentation with the Regular Grievance, listing more than one issue per grievance, expiration of the filing period, repetition with another grievance, and the grievance being a request for services.  (Wagner Aff. ¶ 11.)

### C. Drayton's Housing Assignments

On June 24, 2022, Drayton was placed in cell A-2-203 on safety precautions based on the directive of the River North Mental Health Department. With this placement, one precaution is that an inmate is not allowed to have a pen or any writing instrument in his cell, the concern being that the inmate may try to harm himself or others. (Hall Aff. ¶ 5.) Drayton was on safety precautions until the morning of July 7, 2022. At approximately 9:30 a.m., Drayton was removed from safety precautions and moved from cell A-2-203 to cell A-2-242, where he was permitted once again to have his property. (*Id.* ¶ 6, Encl. A.) Drayton's deadline for filing an Informal Grievance related to the June 24 incident was July 9, 2022; his deadline for filing a Regular Grievance was July 24, 2022.

According to Hall, the River North Unit Manager, River North provides avenues for an inmate on safety precautions to file a grievance, an offender request form, or to do legal work. (Hall Aff. ¶ 7.)[2] If the inmate informs staff that he needs to file a grievance or do some legal work, security staff will pull him from his cell, seat him, secure him to a pod table, and provide him with the proper forms and a pen. Staff will supervise the inmate while he is writing. (*Id.* ¶ 8.) Another option is that an inmate can request that staff act as a scribe and write the grievance or other document at the cell door. (*Id.* ¶ 9.) Once safety precautions were removed, Drayton was allowed to have his own pen. (*Id.* ¶ 10.)

### D. Drayton's Use of the Grievance Procedure

#### 1. Informal Complaint

Drayton submitted Written/Informal Complaint, Log No. RNCC-22-INF-01071, and it was received in the River North Grievance Office on July 18, 2022. Drayton wrote that he had

---

[2] The record is not clear regarding if or how inmates are informed of these other avenues. They are not described or explained in OP 866.1.

been assaulted. Chief of Housing and Programs McBride responded on August 1, 2022, and wrote, "Your allegations are being looked at by SIU", referring to VDOC's Special Investigations Unit. McBride's response was sent to Drayton in the institutional mail. (Wagner Aff. ¶ 15, Encl. B, C.) Drayton's informal complaint was submitted after the 15-day timeframe required by OP 866.1; even so, all Written/Informal Complaints are responded to by staff and not rejected at intake as untimely. (*Id.* ¶ 16.)

### 2. Regular Grievances

Drayton submitted three nearly identical Regular Grievances that were received in the River North Grievance Office on July 18, 2022. Drayton signed and dated all three of these Regular Grievances as July 18, 2022. All three Regular Grievances contained essentially the same allegations of being assaulted by staff. (Wagner Aff. ¶ 17, Encl. D.) One of these grievances was addressed to the "Investigation Unit" and indicated the date of the assault was June 24, 2022. Another of these grievances was addressed to Assistant Warden Batamen. Drayton wrote June 24, 2022, as the date of the assault in the area on the form for the date of the incident, but in the body of the grievance, he wrote the date as July 24, 2022. The third grievance was addressed to Major Sharp, and the July 24 date was indicated on the body of the grievance. (*Id.* ¶¶ 18–20, Encl. D.)

Counselor Snow, the acting Grievance Coordinator, did not accept the three Regular Grievances because they did not meet the intake criteria. Drayton did not attach his Written/Informal Complaint to document his attempt for the Informal Complaint Process. Counselor Snow did not assign a log number to these grievances and returned them to Drayton. (Wagner Aff. ¶ 21, Encl. D.)

### 3. Follow-up to Informal Complaint

Drayton attempted to follow-up his previous Written/Informal Complaint, Log No. RNCC-22-INF-01071, with a Regular Grievance dated August 1, 2022. Drayton wrote that the officers used racial slurs against him and assaulted him on June 24, 2022, by jumping on him, punching him, kicking him, and using OC spray on him. (Wagner Aff. ¶ 22, Encl. E.) The River North Grievance Coordinator rejected Drayton's Regular Grievance at intake and determined that it as non-grievable because it pertained to a disciplinary charge that Drayton received related to the incident. The Grievance Coordinator did not assign a log number and returned it to Drayton. (*Id.* ¶ 24.) The grievance was filed more than thirty days after the June 24 incident.

### 4. Additional Informal Complaints and Regular Grievances

Drayton submitted several other Informal Complaints to the River North Grievance Officer on July 18 and 19, 2022, related to the allegations in this lawsuit. CHAP McBride responded to each Informal Complaint[3] and wrote, "Answered on RNCC-22-01071". (Wagner Aff. ¶ 26.)

Drayton also submitted Regular Grievances for each of these Informal Complaints, dated either August 1, 2, or 3, 2022, pertaining to the June 24 incident. The Grievance Coordinator did not accept any of these Regular Grievances because they pertained to the disciplinary process. They were also beyond the thirty-day time limit for submitting a Regular Grievance. The acting Grievance Coordinator did not assign log numbers and returned these grievances to Drayton. (Wagner Aff. ¶ 28, Encl. F.)

---

[3] The Informal Complaints were assigned the following log numbers: RNCC-22-INF-01060, 01070, 01079, 01080, 01081, and 01082.

E. **Drayton's Responses to Summary Judgment Motion**

Drayton filed several responses to defendants' motion for summary judgment. (*See* Dkt. Nos. 82, 83, 85, 88, 91, 92, 94, 95, 96, 101, 102, 103.) The court considered these submissions, even though many of them were untimely pursuant to the court's *Roseboro* notice, and many of them were unsigned. Among these filings, Drayton submitted copies of OP 866.1 with portions of it highlighted or marked as exhibits (Dkt. No. 82), along with related VDOC documents describing the disciplinary process (Dkt. No. 92-1).

F. **Drayton's Motion to Compel**

Drayton filed a motion to compel discovery on December 8, 2023, (Dkt. No. 97) seeking various items related to the incident on June 24, 2022, including surveillance footage and incident reports. Defendants oppose the motion. (Dkt. No. 98.)

## II. ANALYSIS

A. **Motion to Compel**

The court will address the pending motion to compel before proceeding to the summary judgment motion. Plaintiff's motion ignores the court's previous order which stayed all merit-based discovery "pending the court's ruling on defendants' motion for summary judgment. Plaintiff may seek discovery on documents he believes he needs to respond only to the issue of exhaustion." (Dkt. No. 90.) As noted, plaintiff's motion seeks documents and items related to the incident itself. These items are not relevant to the issue of exhaustion. Therefore, the court will deny Drayton's motion to compel.

B. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25.  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1

9

(D.S.C. May 2, 2023).  A court cannot assume the existence of a genuine issue of material fact where none exists.  Fed. R. Civ. P. 56(c).

**C. Exhaustion Under the Prison Litigation Reform Act (PLRA)**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks.  *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  An inmate's failure to follow the required procedures of the prison administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Exhaustion serves "two main purposes." *Woodford*, 548 U.S. at 89.  First, the exhaustion requirement "protects administrative agency authority" by allowing the agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."  *Id.*  Second, "exhaustion promotes efficiency" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court."  *Id.*  But the court is "obligated to ensure that any defects in administrative exhaustion were not

procured from the action or inaction of prison officials." *Shipp v. Punturi*, Civil Action No. 7:21cv00414, 2023 WL 7125259, at *3 (W.D. Va. Oct. 30, 2023) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

### 1. Excessive force, assault, and battery

As detailed herein, Drayton did not exhaust his administrative remedies with respect to the incident that occurred on June 24, 2022, wherein Drayton alleges that defendants assaulted him and used excessive force, and he concedes that point (Am. Compl. at 6). Drayton did not file a timely Written/Informal Complaint, but he did attempt to file a timely Regular Grievance related to these allegations within thirty days of the June 24 incident, as required by OP 866.1. His attempt, however, was rejected because he did not comply with the established intake criteria. He did not attach an informal complaint to the Regular Grievance. He notes, however, that he was under safety precautions and did not have forms or a writing utensil.

The court finds that there is an issue of fact as to whether the administrative remedies were available to Drayton. First, the fact that Drayton only had one or two days upon being released from safety precautions suggests that administrative remedies may have been unavailable. Second, while defendants have outlined procedures that were purportedly available to pursue exhaustion while on safety precautions, there is no evidence that the existence of these procedures—such as the ability to request a pen and use it under supervision or to dictate his grievance to a staff member acting as a scribe—was communicated to inmates generally or to Drayton in particular.

Thus, the court finds that defendants are not entitled to summary judgment on the exhaustion issue, and moreover, that an evidentiary hearing is necessary to resolve these factual disputes concerning exhaustion of administrative remedies as required under § 1997e(a). *See, e.g.*, *Allen v. Harwood*, 728 F. App'x 222 (4th Cir. 2018) ("[W]e discern no error in the district court's decision to hold an evidentiary hearing—and reach credibility determinations based on the evidence presented at that hearing—for the limited purpose of determining whether Allen exhausted his administrative remedies.") (citing *Messa v. Goord,* 652 F.3d 305, 308 (2d Cir. 2011) (approving use of evidentiary hearing to determine whether plaintiff exhausted administrative remedies; collecting cases)).

### 2. Retaliation

Drayton has also alleged that Officer Snead retaliated against him by placing a false disciplinary charge against him on or around June 24, 2022. Drayton did not file any grievances related to this allegation. (*See* Wagner Aff. ¶¶ 30–33.) However, there are issues of fact related to whether administrative remedies were available to Drayton such that he could grieve this alleged incident, for the reasons already stated herein. Therefore, defendants are not entitled to summary judgment on this claim.

### 3. Defendant Richardson

Finally, Drayton alleges that Richardson failed to discipline the River North staff that allegedly assaulted him on June 24. This claim, under a theory of failure to supervise or discipline, must satisfy three elements: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the

alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). Drayton has not created an issue of fact on any of these elements—for example, there is no evidence to suggest that Richardson knew that the other defendants were engaged in pervasive and unreasonable misconduct such as that alleged by Drayton in this case. Therefore, Richardson is entitled to summary judgment, and he will be dismissed from this case. *See, e.g.*, *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (recognizing that a supervisor cannot "reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct"); *Schofield v. Magrey*, No. 3:12-cv-00544, 2015 WL 521418, at *11 (D. Conn. Feb. 9, 2015) ("Plaintiff contends that Chief Reed is liable for his failure to discipline Officer Madore after his conduct in this case, but . . . any such failure to discipline after the fact cannot have caused Plaintiff's injuries and therefore is not actionable under § 1983.").

### III.  CONCLUSION

For the above stated reasons, the court will issue an order denying Drayton's motion to compel and granting in part and denying in part defendants' motion for summary judgment. The court will issue an appropriate order.

Entered: March 19, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge