CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 24, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
            DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAMONT D. DRAYTON,<br>    Plaintiff, | )<br>)<br>) |
| v. | )  Civil Action No. 7:22-cv-00574<br>)<br>)  By:  Elizabeth K. Dillon |
| SGT. NEWMAN, *et al.*,<br>    Defendants. | )        Chief United States District Judge<br>)<br>) |

**MEMORANDUM OPINION**

Lamont D. Drayton, a Virginia inmate proceeding *pro se*, filed this case pursuant to 42 U.S.C. § 1983. The case is before the court on the Report and Recommendation (R&R) of U.S. Magistrate Judge Joel C. Hoppe (Dkt. No. 131), to which Drayton has repeatedly objected since it was issued (Dkt. Nos. 134, 135, 136, 138, 139, 140, 141). Drayton has also filed responses to the summary judgment motion (Dkt. No. 79) that underlies the issues addressed in the R&R. (*See* Dkt. Nos. 142, 144.) Finally, Drayton filed three motions for leave to file an amended complaint. (Dkt. Nos. 137, 143, 146.) The court has also considered post-R&R submissions related to the facts at issue in the R&R. (Dkt. Nos. 132, 133.)

As discussed herein, the court has carefully reviewed *de novo* Drayton's objections to the R&R and his other submissions related to the R&R. Based on its review of the entire record, the court concludes that the magistrate judge's proposed findings of fact are supported by the record, and that Drayton has not shown by a preponderance of the evidence that administrative remedies were not available to him in this case. For these reasons, discussed in more detail below, the court will deny Drayton's attempts to file an amended complaint, overrule Drayton's objections, adopt the R&R, grant defendants' motion for summary judgment on the claims against the

remaining defendants, and enter a final order of dismissal. Plaintiff's motions for leave to amend will also be denied.

## I.  BACKGROUND

In October 2022, Drayton filed a complaint alleging that he was physically assaulted in his prison cell at River North Correctional Center (RNCC). (Dkt. No. 1.) After several attempts to amend his complaint, plaintiff was eventually granted leave to file an amended complaint against defendants J. Adams, Lt. H.M. May, Sgt. Newman, Steven Richardson, and S.M. Snead. (Dkt. Nos. 69, 70.)

Drayton alleges that on June 24, 2022, he was assaulted in his segregation cell by Sgt. Newman, Lt. May, Officer Snead, and Officer Adams. (Am. Compl. 3.) On that date, Drayton complained to Sgt. Newman that Officer Snead took his food tray. Newman and Drayton exchanged obscenities. Newman then opened the cell door, entered, and assaulted Drayton. Snead rushed in and hit Drayton across the head twice with a metal pepper spray can. Lt. May punched Drayton several times, resulting in a bloody nose. Adams pushed Drayton several times while he was in handcuffs; Drayton claims that Adams was trying to break his wrists. May also kneeled on Drayton's back, and Drayton could not breathe. Drayton further alleges that, from June 24 to August 19, 2022, he was not allowed to shower and was confined to a filthy strip cell with dried feces on the walls, poor ventilation, and the smell of urine, and he was subject to mental abuse. (Am. Compl. 4.)

Drayton claims that he was unable to exhaust administrative remedies due to circumstances beyond his control, such as being held in a strip cell and not having any property, including a pencil or paper complaint forms. (*Id.* at 5.) Drayton believes that he was subjected to these conditions for the purpose of preventing him from exhausting his administrative

remedies. (*Id.*) Finally, Drayton alleges that Richardson failed to discipline the officers involved in the assault, thus tacitly authorizing their actions, and that Snead retaliated against him by writing a false disciplinary report, resulting on Drayton's transfer and unspecified sanctions. (*Id.* at 6.)

Defendants moved for summary judgment, arguing that Drayton did not exhaust his administrative remedies on his claims for excessive force, assault, battery, and retaliation. (Dkt. No. 79.) The court found that "there is an issue of fact as to whether the administrative remedies were available to Drayton." (Dkt. No. 104 at 11.) "First, the fact that Drayton only had one or two days upon being released from safety precautions suggests that administrative remedies may have been unavailable. Second, while defendants have outlined procedures that were purportedly available to pursue exhaustion while on safety precautions, there is no evidence that the existence of these procedures—such as the ability to request a pen and use it under supervision or to dictate his grievance to a staff member acting as a scribe—was communicated to inmates generally or to Drayton in particular." (*Id.*) Thus, the court found that defendants were not entitled to summary judgment on the exhaustion issue with respect to plaintiff's claims for excessive force, assault, and battery. (*Id.* at 12.) The court also denied summary judgment on plaintiff's retaliation claim against Officer Snead because "there are issues of fact related to whether administrative remedies were available to Drayton such that he could grieve this alleged incident, for the reasons already stated herein." (*Id.*) Thus, the court referred this matter to the magistrate judge "for an evidentiary hearing and preparation of a report and recommendation as to whether administrative remedies were available to plaintiff with respect to his excessive force and retaliation claims." (Dkt. No. 105.)

In his R&R, the magistrate judge made the following findings of fact:

3

1. Drayton was incarcerated at RNCC during the relevant time. He arrived at RNCC on April 14, 2022.

2. RNCC operated under OP 866.1, the VDOC's standard *Offender Grievance Procedure*, during the relevant time.

3. Drayton had experience with OP 866.1 before he arrived at RNCC.

4. Drayton was oriented to the grievance process upon intake at RNCC.

5. Pursuant to OP 866.1, an inmate properly exhausts his administrative remedies by timely filing a regular grievance at the institutional level and appealing that regular grievance through all applicable levels of review.

6. Prior to filing a grievance, an inmate must demonstrate that he has made a good faith effort to informally resolve his complaint using the Informal Complaint Process. The Informal Complaint Process involves an inmate submitting both a verbal complaint and an Informal/Written Complaint.

7. An Informal/Written Complaint must be filed within 15 days of the incident or discovery of the incident of which the inmate complains.  Regular Grievances are to be submitted within 30 calendar days from the date of the incident.

8. OP 866.1 requires an inmate to submit a copy of his Written Complaint with his Regular Grievance to show that he or she attempted informal resolution.

9. Drayton alleges that on June 24, 2022, he was assaulted in his segregation cell by Sgt. Newman, Lt. May, Officer Snead, and Officer Adams.

10. On June 24, 2022, Drayton was placed in cell A-2-203 on safety precautions based on the directive of the River North Mental Health Department. With this placement, one precaution is that an inmate is not allowed to have a pen or any writing instrument in his cell, the

concern being that the inmate may try to harm himself or others.

11. Drayton was on safety precautions until the morning of July 7, 2022. At approximately 9:30 a.m. on July 7, 2022, Drayton was removed from safety precautions and moved from cell A-2-203 to cell A-2-242, where he was permitted once again to have his property.

12. Drayton's deadline for filing an Informal Grievance related to the June 24 incident was July 9, 2022; his deadline for filing a Regular Grievance was July 24, 2022.

13. Drayton submitted Written/Informal Complaint, Log No. RNCC-22-INF-01071, and it was received in the River North Grievance Office on July 18, 2022. Drayton wrote that he had been assaulted on June 24, 2022, by Sgt. Newman, Lt. May, Officer Snead, and Officer Adams.

14. Drayton submitted three nearly identical Regular Grievances that were received in the River North Grievance Office on July 18, 2022. Drayton signed and dated all three of these Regular Grievances as July 18, 2022. All three Regular Grievances contained essentially the same allegations of being assaulted by staff.

15. Counselor Snow, the acting Grievance Coordinator, did not accept the three Regular Grievances because they did not meet the intake criteria. Drayton did not attach his Written/Informal Complaint to document his attempt for the Informal Complaint Process. Counselor Snow did not assign a log number to these grievances and returned them to Drayton.

16. Drayton attempted to follow-up his previous Written/Informal Complaint, Log No. RNCC-22-INF-01071, with a Regular Grievance dated August 1, 2022. The River North Grievance Coordinator rejected Drayton's Regular Grievance at intake and determined that it as non-grievable because it concerned a disciplinary charge that Drayton received related to the

incident. The stated reason for rejecting the grievance was incorrect because Drayton did not mention a disciplinary charge. The Grievance Coordinator did not assign a log number and returned it to Drayton.

17. Drayton submitted several other Informal Complaints to the River North Grievance Officer on July 18 and 19, 2022, related to the allegations in this lawsuit. CHAP [Chief of Housing and Programs] McBride responded to each Informal Complaint[1] and wrote, "Answered on RNCC-22-01071".

18. Drayton also submitted Regular Grievances for each of these Informal Complaints, dated either August 1, 2, or 3, 2022, about the June 24 incident. The Grievance Coordinator did not accept any of these Regular Grievances because they concerned the disciplinary process.

19. Drayton did not appeal any of the rejections of his grievances while he was at River North.

20. Inmates in safety cells at River North are checked by staff every fifteen minutes.

21. Drayton had access to a writing utensil and grievance forms after being released from the safety cell on July 7, 2022.

22. Between the dates of January 1, 2022, and June 30, 2023, grievances were filed by prisoners who were housed in a safety cell at River North, but no evidence showed that any of those inmates were under similar precautions as Drayton.

23. Drayton did not file any timely informal complaints about his alleged June 24, 2022 assault.

24. Drayton did not file any timely regular grievances about his alleged June 24, 2022

---

[1] The Informal Complaints were assigned the following log numbers: RNCC-22-INF-01060, 01070, 01079, 01080, 01081, and 01082.

assault.

25. Drayton did not appeal any timely regular grievances about his alleged June 24, 2022 assault through all applicable levels of review. (*See* R&R 15–19.)

Then, after analyzing the evidence, the magistrate judge found that Drayton did not show, by a preponderance of the evidence, that administrative remedies were not available to him in this case. (R&R 19–21.)

## II. ANALYSIS

### A. Amended Complaint

Rule 15 of the Federal Rules of Civil Procedure provides that the court should "freely give leave" to amend the complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The court should deny leave to amend when (1) the opposing party would be prejudiced, (2) the amendment is sought in bad faith, and (3) the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

The court finds that defendants would suffer prejudice if the amendment were allowed at this late stage in this case. Moreover, two of the proposed amendments seek only to amend the amount of damages sought by Drayton. (Dkt. Nos. 143, 146.) These amendments would be futile because they do not alter the court's finding in this matter that defendants are entitled to summary judgment due to plaintiff's failure to exhaust his administrative remedies. Accordingly, the motions for leave to amend will be denied.

### B. Standard of Review

With regard to the R&R, the court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). An objection is properly noted, however, only if it is stated "with sufficient

specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir. 2003). Objections must direct the court to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id.*

Upon review, the court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1)(C). In evaluating a magistrate judge's findings after an evidentiary hearing, the court may give a magistrate judge's report and recommendation "such weight as [their] merit commands and the sound discretion of the judge warrants," *United States v. Raddatz*, 447 U.S. 667, 682–83 (1980) (internal quotations omitted), but the court must exercise its non-delegable authority "by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." *Wimmer v. Cook*, 774 F.2d 68, 76 (4th Cir. 1985) (citations omitted).

**C. Exhaustion**

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust his administrative remedies before filing a 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. "There is no question that

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. *Id.* at 216.

In this matter, it is undisputed that Drayton "did not file any timely informal complaint or regular grievances or appeal any timely regular grievances through all applicable levels of review—and thus did not exhaust his administrative remedies . . . ." (R&R 19.) Thus, the burden shifts to Drayton "to show, by a preponderance of the evidence, that . . . administrative remedies were unavailable through no fault of the plaintiff." *George v. Lt. Michalek*, No. 3:19cv155, 2022 WL 3580746, at *8 (E.D. Va. Aug. 19, 2022).

### D. Objections to the R&R

As noted, plaintiff has filed several responses to the R&R and to the motion for summary judgment (Dkt. No. 79), and he has also filed various factual submissions for the court to consider. (*See* Dkt. Nos. 132–36, 138–42, 144.) The court has thoroughly reviewed these filings by Drayton. The court addresses the most relevant objections as follows.

First, plaintiff argues that the short time frame that he had to exhaust his remedies, particularly only having two days after being released from safety precautions on July 7, 2022, was unfair to him and illustrates that administrative remedies were not available to him. (Dkt. No. 132.) This argument ignores that plaintiff still had access to the grievance procedure while he was in a safety cell. "VDOC witnesses at the evidentiary hearing testified consistently that placement in a safety cell, even with mental health precautions, is not a barrier to pursuing a grievance." (R&R 19.) VDOC witnesses Steven Richardson, Brian Hall, and Joseph Bateman explained that while inmates on safety precautions are not allowed to have personal property in

9

their cell for safety reasons, such inmates "can either ask any staff member to take dictation of a complaint or grievance or ask to write a grievance under staff supervision." (*Id.*) And Richardson testified that he "specifically told Drayton that he could use this process when he was in the safety cell, but Drayton did not respond." (*Id.* 19–20.)

Second, plaintiff has lodged several requests for the court to review certain documents in the record. (*See, e.g.*, Dkt. Nos. 133–35.) The court has reviewed these documents and submissions pursuant to the court's *de novo* review.

Third, plaintiff has referenced an appeal to the Regional Ombudsman, which occurred after he was transferred from RNCC. (*See* Dkt. Nos. 138–42, 144.) These complaints (*see* Dkt. Nos. 101, 102) were filed late in 2023, well after the time to exhaust his remedies as set forth in OP 866.1. (*See* Dkt. No. 102 at 2 (noting expired filing period).) Moreover, it is undisputed that Drayton did not exhaust his administrative remedies. As the R&R explains, plaintiff "conceded that he did not exhaust his administrative remedies with respect to the alleged assault on June 24, 2022 . . . ." (R&R 4 (citing Am. Compl. 6).) The only issue for the court is whether administrative remedies were available to Drayton. As noted above, administrative remedies were available during the relevant time period for plaintiff to exhaust.

For these reasons, Drayton's objections will be overruled.

**E. Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

Defendants moved for summary judgment on the basis that Drayton did not exhaust his administrative remedies. Defendants have met their burden of proving, by a preponderance of the evidence, that Drayton did not exhaust his administrative remedies. Conversely, Drayton did not meet his burden of proving, by a preponderance of the evidence, that administrative remedies were not available to him. Accordingly, defendants are entitled to summary judgment.

### III.  CONCLUSION

For the foregoing reasons, the court will overrule Drayton's objections, adopt the R&R, and enter judgment in favor of defendants. An appropriate order will be entered.

Entered: September 24, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge